63 P.3d 765 (2003)
148 Wash.2d 672
STATE of Washington, Petitioner,
v.
C.J., Defendant.
No. 71867-9.
Supreme Court of Washington, En Banc.
Argued June 27, 2002.
Decided February 6, 2003.
*766 Sylvia Cornish, Richland, for Petitioner.
Charles Alden, Kennewick, for Defendant.
MADSEN, J.
The three divisions of the Court of Appeals are divided over the issue presented in this case: whether the State must establish the testimonial competence of a child declarant at the time his or her statements were made to gain admission of those statements under RCW 9A.44.120 where the child declarant is later deemed incompetent to testify at trial. There is a distinction between unavailability as a witness at trial and the requirements of RCW 9A.44.120 for admission of a child's out of court statement. We hold that the proponent of a hearsay statement from a child abuse victim who is unavailable to testify at trial due to incompetency need only meet the statutory requirements of RCW 9A.44.120, and that no additional showing of competency at the time of the hearsay statement is required. We also hold that adequate indicia of reliability exist in the circumstances surrounding the making of the out of court statement in this case, and that sufficient evidence corroborating the assertion was presented as required by RCW 9A.44.120. We reverse the Court of Appeals and reinstate the trial court's verdict.

FACTS
Three-year-old B and his one-year-old brother were supervised in their home by their cousin, the thirteen-year-old female defendant, while their father and mother went *767 out for the evening. Before leaving the children around 6:30 p.m. to meet his wife, B's father helped remove B's pants so that B could tend to his bathroom needs. The father observed B's penis at that time but noticed nothing unusual about it. From the time the father departed until both parents returned about three hours later, only the defendant and the two boys were present in the home. When B's parents returned, B was already asleep in bed.
Early the following morning, B entered his parents' bedroom and announced that he had wet himself overnight. B's mother instructed him to remove his soiled pajamas for the laundry, and after he did, she noticed that the tip of B's penis was swollen. With the father present, she asked B whether his penis hurt, to which he replied "no." Without further prompting, B stated, "[Defendant] rubbed it and made it feel better." The mother said, "She did?" and B responded, "Yeah" and gestured as if masturbating. When the mother again asked, "She did?" B volunteered, "Yes, mommy, and you know what else mommy? She wanted me to touch her potty and she wanted me to lick her potty too." B also related that the defendant showed him her "potty." Although they had taught B to use the word "potty" to refer to genital areas, neither parent had previously heard B make similar remarks or had seen him make similar motions.
The father contacted Child Protective Services and the Sexual Assault Response Center, and then made an appointment for B to see his pediatrician later that morning. The doctor observed that the remnant of B's circumcised foreskin was swollen and filled with fluid, and noted that the physical trauma was consistent with "repeated mechanical stimulation" of B's penis through rubbing or masturbation. The doctor saw no evidence of other causes for the swelling, and the swelling later subsided without further treatment.
B's mother privately contacted a local police officer who had been related to B's family by marriage and who had previously met B on several occasions. The officer interviewed B later that afternoon in B's bedroom, chatted with B about B's toys, heard B sing the alphabet song, and then asked if B knew the difference between the truth and a lie. B answered that when you lie you get spanked. When asked by the officer to determine whether a series of statements was the truth or a lie, B answered that it was the "truth" that B was a boy, that she was a girl, that his doll was red, that the same doll was purple, and that the officer was a green alien. The officer testified that B answered "truth" to all such questions.
The officer explored "good touching," "bad touching," and "secret touching." Without mentioning the defendant's name, the officer asked B if anyone had touched him. B initially shrugged his shoulders but then stated, "[Defendant] touched my potty like this and made it feel good" while making masturbatory gestures with his hand. The officer asked B the same question again, and B repeated the answer in a serious manner. B also stated that the defendant had touched him "last night." The officer then observed B's still swollen penis and saw that it was slightly red at the end. After the officer left, B's father asked how the visit with the officer went. B replied, "Fine," and then said without prompting, "Dad, when [defendant] touched my potty and it wasn't an accident."
The defendant was charged as a juvenile with one count of first-degree child molestation, a class A felony. More than nine months after the incident, the trial court held a preliminary hearing to determine whether B, then four years old, was competent to testify at trial. The State asked B a series of questions and found it difficult to elicit consistent answers from B. B identified several obviously false statements as the "truth," and later stated that he had answered all the questions truthfully. B also answered "no" when asked if anyone bigger or older than he had touched him in any way. B explained that he got in trouble when he lied, and did not when he told the truth. The State noted that B was very uncomfortable and frightened on the stand. Ultimately, the court determined that B was unable to characterize the difference between truthful and false statements and unable to express a memory of the incident in words, and found B incompetent to testify and therefore unavailable *768 for purposes of RCW 9A.44.120. Neither party objected to that ruling.
After hearing testimony from B's mother and father and the police officer, the trial court found there were sufficient indicia of reliability to support each hearsay statement and admitted those statements under RCW 9A.44.120 and ER 803.[1] The trial court also found that at the time of his statements, B was competent to describe accurately what had happened and that B had no animosity toward the defendant or motive to lie about the incident.
The court specifically determined that, at the time of his statements, B had no motive to lie to his mother, father, or the officer; that none of the three witnesses had reason to lie about B's statements; that there was no issue as to B's character; that B had initiated his statements to his mother and father; that B's statements to his mother, father and the officer were made spontaneously and close in time to the incident; that B had answered the officer's questions spontaneously; that B's statements related only to the present incident and not to any past incidents; that B showed no lack of knowledge regarding the incident; and that the possibility that B had a faulty recollection of the incident was remote. The court also found that the doctor's findings corroborated B's statements and ruled out other causes of the injury. Following a bench trial, the defendant was found guilty and she appealed.
The Court of Appeals, Division Three, reversed, holding that the trial court abused its discretion in admitting the child's hearsay statements because the evidence did not show that the child was competent at the time the statements were made. State v. C.J., 108 Wash.App. 790, 792, 32 P.3d 1051 (2001). Citing our decisions in State v. Ryan, 103 Wash.2d 165, 691 P.2d 197 (1984) and Jenkins v. Snohomish County Pub. Util. Dist. No. 1, 105 Wash.2d 99, 713 P.2d 79 (1986), as well as the Court of Appeals, Division Two decision in State v. Karpenski, 94 Wash.App. 80, 971 P.2d 553 (1999), the court below held that before the trial court may admit a child's hearsay statement, it must determine whether the witness was competent at the time he made the statements as well as whether the statement satisfies the reliability requirements of RCW 9A.44.120. C.J., 108 Wash.App. at 796-97, 32 P.3d 1051. Specifically, the Court of Appeals faulted the State for failing to establish that at the time B made the statements, he understood the difference between a truthful statement and a false statement, and that he understood his obligation to speak truthfully about the incident. C.J., 108 Wash.App. at 797, 32 P.3d 1051.
The State filed a petition for review claiming that the decision conflicts with the Court of Appeals, Division One decisions in State v. Gribble, 60 Wash.App. 374, 804 P.2d 634 (1991) and In re Dependency of S.S., 61 Wash.App. 488, 814 P.2d 204 (1991). The State contends that the statute requires only a finding of "sufficient indicia of reliability" surrounding the statement and corroborative evidence of the acts described in the statement, regardless of whether the court finds the child unavailable to testify.
We granted the State's petition.

ANALYSIS
RCW 9A.44.120 governs the admissibility of a child victim's out of court hearsay statements. ER 807. The statute provides that:
A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, describing any attempted act of sexual contact with or on the child by another, or describing any act of physical abuse of the child by another that results in substantial bodily harm as defined by RCW 9A.04.110, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings, including juvenile offense adjudications, in the courts of the state of Washington if:
(1) The court finds, in a hearing conducted outside the presence of the jury, *769 that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his or her intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.
RCW 9A.44.120 (emphasis added); ER 807.
In Pennsylvania v. Ritchie, 480 U.S. 39, 60, 107 S.Ct. 989, 1003, 94 L.Ed.2d 40 (1987) the United States Supreme Court recognized that child abuse is one of the most difficult crimes to detect and prosecute, largely because there are often no witnesses to the act except the victim and the perpetrator. Concerns were raised in the state legislature that child abuse cases were not prosecuted because the limitations of traditional hearsay exceptions prevented the admission of otherwise reliable statements made by child victims.[2] The legislature recognized that children are often ineffective witnesses at trial because they are intimidated by the accused, who is often a parent or relative, by the trial process, or both. State v. Jones, 112 Wash.2d 488, 493-94, 772 P.2d 496 (1989). Additionally, young children's memories fade with the passage of time. Id.
Through passage of RCW 9A.44.120, the legislature intended to give trial courts greater discretion in determining the trustworthiness of a child victim's out of court statement. Sheryl K. Peterson, Sexual Abuse of ChildrenWashington's New Hearsay Exception, 58 Wash. L.Rev. 813 (1983); Jones, 112 Wash.2d at 493, 772 P.2d 496. The legislature established a wholly new exception to the hearsay rule by allowing a court to find that the time, content, and circumstances of the statement provide sufficient indicia of reliability. Ryan, 103 Wash.2d at 174, 691 P.2d 197; RCW 9A.44.120.[3]
This court rejected a constitutional challenged to RCW 9A.44.120 in Ryan, 103 Wash.2d 165, 691 P.2d 197. In Ryan, we recognized that RCW 9A.44.120 is not a firmly rooted hearsay exception, but its requirements nevertheless comport with the general approach used to test hearsay against confrontation guaranties. Id. at 170, 691 P.2d 197. We observed:
The statute requires a preliminary determination "that the time, content, and circumstances of the statement provide sufficient indicia of reliability ...". It requires the child to testify at the proceedings, or to be unavailable, and does not alter the necessary showing of unavailability.
Id. at 170, 691 P.2d 197 (quoting RCW 9A.44.120(1)). See also State v. Whelchel, 115 Wash.2d 708, 715, 801 P.2d 948 (1990).
*770 A child's competency to testify at trial is determined within the framework of RCW 5.60.050. Ryan, 103 Wash.2d at 172, 691 P.2d 197 (citing State v. Froehlich, 96 Wash.2d 301, 635 P.2d 127 (1981)). That statute defines the following types of persons as incompetent witnesses at trial:
(1) Those who are of unsound mind, or intoxicated at the time of their production for examination, and
(2) Those who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly.
RCW 5.60.050. A young child is competent to testify as a witness at trial if that child has (1) an understanding of the obligation to speak the truth on the witness stand, (2) the mental capacity at the time of the occurrence to receive an accurate impression of the matter about which the witness is to testify, (3) a memory sufficient to retain an independent recollection of the occurrence, (4) the capacity to express in words the witness' memory of the occurrence, and (5) the capacity to understand simple questions about it. State v. Swan, 114 Wash.2d 613, 645, 790 P.2d 610 (1990) (citing State v. Allen, 70 Wash.2d 690, 692, 424 P.2d 1021 (1967)). The determination of competency rests primarily with the trial judge who sees the witness, notices his or her manner and demeanor, and considers his or her capacity and intelligence. Swan, 114 Wash.2d at 645, 790 P.2d 610.
A determination under RCW 5.60.050 that a child witness is incompetent to testify at the time of trial does not, however, resolve the question whether an out of court statement by a child is admissible if the statement is reliable. Determining the admissibility of a child victim's hearsay statement requires a separate and different analysis under RCW 9A.44.120. The statute's prerequisites to the admissibility of a child victim's hearsay statements do not include any requirement that a declarant must be shown to have possessed testimonial competency at the time of the out of court statement, specifically the ability to distinguish the difference between truthful and false statements and an understanding of an obligation to tell the truth.
Although the statute contains no such requirement, the Court of Appeals read our decision in Ryan as requiring a finding of testimonial competency at the time of his out of court statement in addition to the statute's reliability requirements. C.J., 108 Wash. App. at 796-98, 32 P.3d 1051. The Court of Appeals relied on a statement in Ryan that "the declarant's competency is a precondition to admission of his hearsay statements as are other testimonial qualifications." Ryan, 103 Wash.2d at 173, 691 P.2d 197 (citing 5 John Henry Wigmore, Evidence § 1424, at 255 (James H. Chadbourn rev. ed.1974) (the admission of hearsay statements presupposes that the declarant possessed the qualifications of a witness)). However, the court in Ryan never actually applied any requirement of "competency" in connection with the time of the hearsay. The court did, however, identify factors that are useful in determining reliability under RCW 9A.44.120:
1. Whether the declarant, at the time of making the statement, had an apparent motive to lie;
2. Whether the declarant's general character suggests trustworthiness;
3. Whether more than one person heard the statement;
4. The spontaneity of the statement;
5. Whether trustworthiness is suggested from the timing of the statement and the relationship between the declarant and the witness;
6. Whether the statement contains express assertions of past fact;
7. Whether the declarant's lack of knowledge could be established by cross-examination;
8. The remoteness of the possibility that the declarant's recollection is faulty; and
9. Whether the surrounding circumstances suggest that the declarant misrepresented the defendant's involvement.
Ryan, 103 Wash.2d at 175-76, 691 P.2d 197 (citing State v. Parris, 98 Wash.2d 140, 654 P.2d 77 (1982); Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)). Testimonial competence (the ability to understand *771 the difference between the truth and a lie and the obligation to speak truthfully) is not among the factors used to determine reliability.
The different standards for determining testimonial competency and the reliability of an out of court statement are justifiably tailored to satisfy different purposes. The trial setting requires that a witness give reliable testimony and fully participate in cross examination, thus the witness' ability to distinguish truthful statements from false statements, and knowledge of his sworn obligation to tell the truth, is paramount. On the other hand, hearsay exceptions necessarily contemplate that the declarant's perception, memory, and credibility will not be explored through the use of cross examination. Instead, the trial court must find that the circumstances surrounding the making of the statement render the statement inherently trustworthy. State v. Rice, 120 Wash.2d 549, 565-66, 844 P.2d 416 (1993) (quoting State v. Anderson, 107 Wash.2d 745, 750-51, 733 P.2d 517 (1987)).
It is clear from the statute's plain language that the legislature did not intend to exclude the hearsay statements of a child who is incompetent to testify, so long as the statute's requirements of reliability and corroboration are satisfied. It is equally clear that the legislature did not intend that RCW 9A.44.120 require an additional finding that a child declarant understood the difference between a truthful statement and a false statement at the time the statement was made, or that he understood his obligation to speak truthfully about the incident. Had the legislature intended that requirement, it would have been included in the statutory language. Statutes are interpreted to best advance the legislative purpose. Morris v. Blaker, 118 Wash.2d 133, 143, 821 P.2d 482 (1992).
We also note that a finding that the child victim is incompetent to testify at trial does not make the hearsay statements unreliable, State v. Doe, 105 Wash.2d 889, 896, 719 P.2d 554 (1986), though it does make the child unavailable as contemplated by RCW 9A.44.120(2)(b). The trial court must determine whether extrinsic evidence, or the nature of the comments themselves, renders the child's statements sufficiently reliable. Admissibility under the statute does not depend on whether the child is competent to take the witness stand, but on whether the comments and circumstances surrounding the statement indicate it is reliable. State v. Swan, 114 Wash.2d 613, 648, 790 P.2d 610 (1990).
Finally, in some cases, like this one, there will be some evidence of whether the child had the ability to discern between truth and lies at the time the hearsay statement is made. Although not identified as a Ryan factor, if such evidence exists, it may be considered as part of the totality of the circumstances indicating reliability. This does not mean that a determination of competency must be made as of the time of the statement, nor does it mean that the inability to distinguish between truth and lies alone ends the inquiry.
Here, the trial court stated:
[J]ust because this boy cannot characterize a statement as truth or lie does not really get to the question. There's a tremendous difference, at least in my mind, between someone being able to characterize a statement as truth or lie or moral or immoral and being able to describe an event that happened. I saw this, this happened to me, this did not happen, and that's the crux of this case and that's thethat's the hurdle that the Prosecutor has to jump over to show that the child was competent when the statement was made. That he couldthat he could accurately describe what happened. And I findthe court finds that he could.
Report of Proceedings at 194. The trial court made specific findings under the Ryan factors for each of the statements made by B to his mother, father, and the police officer. Those findings are supported by the record, which shows that at the time of his statements, B accurately recounted his contact with the defendant to adults he knew and trusted in informal, comfortable circumstances.
The trial court is necessarily vested with considerable discretion in evaluating the indicia of reliability, including whether the *772 evidence demonstrates that a declarant was capable of receiving just impressions of facts and of relating them truthfully. Swan, 114 Wash.2d at 648, 790 P.2d 610. We accordingly review the trial court's decision to admit evidence for abuse of discretion. See generally State v. Finch, 137 Wash.2d 792, 810, 975 P.2d 967, cert. denied, 528 U.S. 922, 120 S.Ct. 285, 145 L.Ed.2d 239 (1999). A trial court abuses its discretion only when its decision is manifestly unreasonable or is based on untenable reasons or grounds. State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997). By following the statute's requirements and the guides to its implementation announced in Ryan, the trial court found tenable reasons and grounds for its conclusions of reliability. The trial court did not abuse its discretion by finding that B's statements were reliable.

CORROBORATION
The court below did not consider the defendant's claim of error concerning the corroboration requirement in RCW 9A.44.120(2)(b). Accordingly, we will consider the issue. RAP 13.7(b).
RCW 9A.44.120(2)(b) requires that if a child declarant is unavailable to testify as a witness at trial, the abusive act described in the child's statements must be corroborated by evidence of the act. While the confrontation clause does not require it, the legislature included that additional requirement to reduce the risk that the emotional appeal of a child's out of court statement would result in an erroneous conviction. Jones, 112 Wash.2d at 494-95, 772 P.2d 496; RCW 9A.44.120(2)(b). Corroboration of the criminal act described by an unavailable child declarant's hearsay statement may not be used to "bootstrap" the statement for purposes of determining its reliability. Ryan, 103 Wash.2d at 174, 691 P.2d 197. The finding of corroborative evidence that supports the hearsay statement is independent of the statement's reliability. See Ryan, 103 Wash.2d at 174, 691 P.2d 197. Also, each act of abuse must be separately corroborated under the statute. Jones, 112 Wash.2d at 496, 772 P.2d 496.
In the context of RCW 9A.44.120(2)(b) corroborative evidence is that which would support a logical and reasonable inference that the act of abuse described in the hearsay statement occurred. Swan, 114 Wash.2d at 622-23, 790 P.2d 610. A trial court is not constrained by formal evidentiary considerations in determining whether there is corroborative evidence of the act claimed by the child declarant. Jones, 112 Wash.2d at 493, 772 P.2d 496. Direct evidence may include medical evidence of abuse. Jones, 112 Wash.2d at 495, 772 P.2d 496 (citing State v. Gitchel, 41 Wash.App. 820, 828, 706 P.2d 1091 (1985)).
In many child sex abuse cases, there is no physical evidence of harm, nor any eyewitnesses, so the corroboration requirement may be satisfied by both direct and indirect evidence. Jones, 112 Wash.2d at 496, 772 P.2d 496 (the statute's essential purposes should not be defeated by a stubborn insistence on corroboration that is impossible to obtain). Indirect evidence may include a child victim's precocious knowledge of sexual activity. See, e.g., Jones, 112 Wash.2d 488, 772 P.2d 496; Swan, 114 Wash.2d 613, 790 P.2d 610; State v. Hunt, 48 Wash.App. 840, 848-50, 741 P.2d 566 (1987). This court found that the record in Jones did not reveal any other way in which the victim could have learned of specific unusual sexual acts described in the victim's out of court statement. 112 Wash.2d at 497, 772 P.2d 496. In Swan, the child victims also described a sex act which this court said was not as unusual as those described in Jones, but its accurate description by a three-year-old indicated precocious sexual knowledge that was considered corroborative of abuse. Swan, 114 Wash.2d at 633, 790 P.2d 610. Although testimony about a child's masturbatory behavior in Swan was only "partially corroborative," when viewed together with the other evidence, the corroborative value of the evidence was sufficient. 114 Wash.2d at 634, 790 P.2d 610.
In the present case, B's pediatrician testified in the pretrial hearing that he had observed the swollen and fluid-filled remnant of B's circumcised foreskin, and that the physical trauma was consistent with vigorous, *773 repeated mechanical stimulation of B's penis through rubbing or masturbation. The doctor wrote his diagnosis of balanitis, along with "victim of sexual abuse" in B's medical chart. He also testified that during his examination, he ruled out cuts, scratches, infections, allergic reactions, and cleanliness issues as alternative causes for the swelling, and also noted that B seemed to be very open in discussing the matter with his parents, so there was no need to send B for counseling. The doctor testified that he had never seen a three-year-old boy spontaneously begin experimenting with masturbation, however theoretically possible that was, and that such sexual type behavior in a three-year-old child is usually taught by someone. The defense presented its own pediatrician who testified that she would have done other things to rule out other causes of the balanitis other than sexual abuse.
B's doctor's testimony was adequate for the corroboration requirement of RCW 9A.44.120(2)(b). In his testimony, the doctor recognized that, "Most of the time in cases of sexual abuse that I've come across, there's less evidence than this." The trial court chose to give greater weight to B's doctor and in doing so did not abuse its discretion.
The record also contains evidence of precocious sexual knowledge that, although not relied on by the trial court, also adds corroborative weight. Like the statements of the child victims in Jones and Swan, B's statements reflected knowledge of particular sex acts ("she wanted me to touch her potty and she wanted me to lick her potty too"). The record in this case does not show alternative sources for that knowledge, other than B's contact with the defendant. B made masturbatory motions to further describe his statements, which, unlike the child victim's postabuse masturbatory behavior in Swan, may indicate behavior learned at the hands of the defendant as well as the actions by the defendant herself ("[Defendant] rubbed it and made it feel better").

CONCLUSION
A trial court need not make a separate, additional finding that an unavailable child victim understood the difference between a truthful statement and a false statement at the time the hearsay statement was made, nor that the declarant understood the obligation to speak truthfully about the incident at that time to admit a child's hearsay statement under RCW 9A.44.120. The statute does not require it, nor does our case law. The trial court properly followed the statute and applied the Ryan factors, and found the child's statements reliable and corroborated. We reverse the Court of Appeals and reinstate the trial court's verdict.
ALEXANDER, C.J., and SMITH, J.P.T., and IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.
SANDERS, J. (dissenting).
Inexplicably, the trial court found B.K. incompetent to testify at trial because he could not understand the difference between truth and falsity while, at the same time, the court admitted as "reliable" earlier hearsay statements made by the same child when he was even younger. These hearsay declarations from an incompetent witness were used to convict a 13-year-old girl of first degree child molestation. The Court of Appeals saw something wrong with this picture, and so do I.
That court concluded the trial court should not have admitted the hearsay statements without first finding that when B.K. "made the statements, he understood the difference between a truthful statement and a false statement, or his obligation to speak truthfully about the incident," and reversed. State v. C.J., 108 Wash.App. 790, 797, 32 P.3d 1051 (2001). It held: "before the court may admit a child's hearsay statement for a witness who is unavailable due to incompetency, the trial court must determine both whether the witness was able to comprehend and truthfully relate the events described in the statement and, whether the statement satisfies the reliability requirements of RCW 9A.44.120." Id. at 796-97, 32 P.3d 1051 (citing Jenkins v. Snohomish County Pub. Util. Dist. No. 1, 105 Wash.2d 99, 102, 713 P.2d 79 (1986); State v. Ryan, 103 Wash.2d 165, 173-74, 691 P.2d 197 (1984); State v. Karpenski, *774 94 Wash.App. 80, 112-13, 971 P.2d 553 (1999)).
But our majority reverses the Court of Appeals and reinstates the conviction of B.K.'s 13-year-old female cousin. The majority concludes there is no need to show contemporaneous ability to comprehend or truthfully relate the events described in the statement to comply with RCW 9A.44.120, majority at 766-767, notwithstanding this statute expressly conditions admission of child hearsay statements on a threshold determination of reliability. The majority holds compliance with the statute does not require the hearsay declarant even be competent when the statement was made, nor that the declarant be able to distinguish between truth and lies, and appreciate the difference. See majority at 771. I find this logic a bit hard to fathom.
The majority treats the question before the court as merely a matter of divining legislative intent and then furthering it. But I see no evidence the legislature intended courts to admit hearsay declarations from an incompetent witness who cannot distinguish truth from fantasy. And if that was the legislature's intent, the United States Constitution's sixth amendment confrontation clause and article I, section 22[1] of our state constitution may have something to say about it.
In pertinent part RCW 9A.44.120 provides: A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, ... not otherwise admissible by statute or court rule, is admissible in evidence in ... criminal proceedings, including juvenile offense adjudications, in the courts of the state of Washington if:
(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
In sum, the necessary elements to prove as a condition precedent to admitting the hearsay declaration of a child under age 10 are:
(1) the statement is reliable; and
(2) (a) the child testifies, or
(b) is unavailable, in which case there must be corroborative evidence of the act.
The statute's elements track United States Supreme Court confrontation clause jurisprudence. See State v. Rohrich, 132 Wash.2d 472, 939 P.2d 697 (1997) (legislature intended the child hearsay statute to be constitutional and carefully drafted it to avoid any confrontation clause problems). Statutes should be construed consistently with the constitution when reasonable to do so. In re Pers. Restraint of Young, 122 Wash.2d 1, 41, 857 P.2d 989 (1993).

INDICIA OF RELIABILITY
Both RCW 9A.44.120(1) and the confrontation clause require the proponent of hearsay statements to show "sufficient indicia of reliability." RCW 9A.44.120(1); Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Roberts explained:

*775 In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.
Roberts, 448 U.S. at 66, 100 S.Ct. 2531. The Court further noted that the indicia of reliability provided must be sufficient to "`"afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement."'" Id. at 65-66, 100 S.Ct. 2531 (quoting Mancusi v. Stubbs, 408 U.S. 204, 213, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972) (quoting California v. Green, 399 U.S. 149, 161, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970))).
With respect to child hearsay, Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) holds that the showing of "`particularized guarantees of trustworthiness'" must focus on circumstances surrounding the making of a hearsay statement which show the hearsay statement to be particularly worthy of belief. Id. at 819, 110 S.Ct. 3139.
Wright specifically held the relevant circumstances do not include corroborative physical evidence such as medical evidence of abuse. Id. at 824, 110 S.Ct. 3139. The Court noted, "[c]orroboration of a child's allegations of sexual abuse by medical evidence of abuse, for example, sheds no light on the reliability of the child's allegations regarding the identity of the abuser." Id. We reached a similar conclusion in Ryan, holding "[a]dequate indicia of reliability must be found in reference to circumstances surrounding the making of the out-of-court statement, and not from subsequent corroboration of the criminal act." Ryan, 103 Wash.2d at 174, 691 P.2d 197.
The emphasis in a reliability determination is on the truthfulness of the declarant: "[I]f the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." Wright, 497 U.S. at 819-20, 110 S.Ct. 3139 (citing 5 John Henry Wigmore, Evidence § 1420, at 251 (James H. Chadbourn rev. ed.1974)). "[T]he unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." Id. at 822, 110 S.Ct. 3139. In short, the truthfulness and trustworthiness of the declarant must be shown to establish the hearsay is reliable.
This requirement is not met where a child is too young to appreciate the difference between truth and fantasy.[2] The statements of children who are incompetent due to age to distinguish between truth and falsity are inherently unreliable. The Court of Appeals recognized this and correctly held it must be shown the child was able to distinguish truth and falsehood at the time the statement was made for it to be reliable. C.J., 108 Wash.App. at 796-97, 32 P.3d 1051. To hold otherwise is to stray from the holdings of the United States Supreme Court and to weaken the protections afforded defendants by the confrontation clause and article I, section 22 of our state constitution.
More should be said about the majority's misreading of State v. Ryan. The majority holds that no determinations about contemporaneous competency need be made under RCW 9A.44.120. See majority at ___ - ___. *776 This is not only wrong on its face but directly contrary to our holding in Ryan. Ryan stated unequivocally, "If the declarant was not competent at the time of making the statements, the statements may not be introduced through hearsay repetition." Ryan, 103 Wash.2d at 173, 691 P.2d 197 (citing 5 Wigmore, supra, § 1424, at 304.)
The majority treats this as no more than dicta, arguing that Ryan never actually applied any competency standard. Majority at 770. But if dicta, it was well reasoned dicta. The Ryan court first discussed the requirement: "`The better-reasoned cases seem to require that, with the exception of res gestae utterances, all hearsay statements introduced under any exception to the [hearsay] rule should be made by someone competent as a witness at the time the statement was made.'" 103 Wash.2d at 174, 691 P.2d 197 (quoting Charles F. Stafford, The Child as a Witness, 37 Wash. L.Rev. 303, 307 (1962)). The court also quoted Wigmore as support for the requirement:
"The hearsay rule is merely an additional test or safeguard to be applied to testimonial evidence otherwise admissible. The admission of hearsay statements, by way of exception to the rule, therefore presupposes that the assertor possessed the qualifications of a witness ... in regard to knowledge and the like."
Id. at 173, 691 P.2d 197 (emphasis omitted) (quoting 5 Wigmore, supra, § 1424, at 255).[3] Then the court applied the requirement: "The trial court did not determine whether the children were competent when they made the statements. If they were not, their statements must be excluded as being unreliable." Ryan, 103 Wash.2d at 174, 691 P.2d 197. The rule was both expounded and applied, contrary to the majority's assertion.
Several Court of Appeals, Division One opinions have suggested Ryan's contemporary competency requirement has been called into question by State v. Doe, 105 Wash.2d 889, 719 P.2d 554 (1986). See, e.g., State v. Hunt, 48 Wash.App. 840, 845-46, 741 P.2d 566 (1987); State v. Gribble, 60 Wash. App. 374, 382, 804 P.2d 634 (1991); In re Dependency of S.S., 61 Wash.App. 488, 495, 814 P.2d 204 (1991) (following Gribble). However, the suggestion that Doe undermines Ryan is mistaken. Doe held that lack of competency at trial did not foreclose admission of a hearsay statement. Doe, 105 Wash.2d at 896, 719 P.2d 554. We held that "[r]eliability does not depend on whether the child is competent to take the witness stand, but whether the [contents of] and circumstances surrounding the statement indicate it is reliable." Doe, 105 Wash.2d at 896, 719 P.2d 554. Doe is consistent with Ryan. Both decisions recognize that reliability of a statement must be determined with respect to the time when the statement was made. Doe, 105 Wash.2d at 896, 719 P.2d 554; Ryan, 103 Wash.2d at 173, 691 P.2d 197.
The Hunt opinion also found that Ryan intended competency to be understood as only a showing the declarant was able to receive just impressions of the facts. Hunt, 48 Wash.App. at 844, 741 P.2d 566. This narrow reading is not supported. Ryan said that inability to receive just impressions of the facts was "[o]ne of the reasons for finding a child incompetent...." 103 Wash.2d at 173, 691 P.2d 197. The court defined competency more broadly: "Competency ... means that the witness `has sufficient mental capacity to understand the nature and obligation of an oath and possessed of sufficient mind and memory to observe, recollect, and narrate the things he has seen or heard.'" Id. at 171, 691 P.2d 197 (quoting State v. Moorison, 43 Wash.2d 23, 28-29, 259 P.2d 1105 (1953)). Ryan was very clear that its reasoning applied to competence as a witness: "`The better-reasoned cases seem to require ... hearsay statements introduced under any exception to the rule should be made by someone competent as a witness at the time the statement was made.'" Ryan, 103 Wash.2d at 174, 691 P.2d 197 (quoting Stafford, supra, at 307). Thus, these departures from our holding in Ryan are not justified by Ryan itself or by State v. Doe.[4]

*777 AVAILABILITY
In addition to reliability, both RCW 9A.44.120(2) and the confrontation clause require a declarant either testify or be "unavailable" before his or her hearsay statements may be admitted. Roberts, 448 U.S. at 65, 100 S.Ct. 2531. However, the meaning of "unavailable" is not equivalent under the confrontation clause and ER 804. The confrontation clause requires that "the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." Roberts, 448 U.S. at 65, 100 S.Ct. 2531. RCW 9A.44.120(2) similarly states that "[t]he child either: (a) Testifies at the proceedings; or (b) Is unavailable as a witness...." Although the language of the statute is suggestive of the requirement under Roberts, this court has linked the meaning of "unavailable" under the statute with the meaning of "unavailable" under ER 804(a). See Doe, 105 Wash.2d at 895, 719 P.2d 554; Ryan, 103 Wash.2d at 171, 691 P.2d 197; State v. Young, 50 Wash.App. 107, 113, 747 P.2d 486 (1987).
It has been suggested that "unavailability" under the confrontation clause is not identical to that under ER 804(a), but we have not as yet articulated the distinction. See State v. Whisler, 61 Wash.App. 126, 133, 810 P.2d 540 (1991); see also Robert H. Aronson, The Law of Evidence in Washington 804-11 (3d ed.1998); 5C Karl B. Tegland, Evidence and Law Practice § 1300.12, at 353 (4th ed.1999). The distinction arises because the Supreme Court confrontation clause jurisprudence appears to make availability contingent only on presence and not on competency. See Barber v. Page, 390 U.S. 719, 724-25, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) ("witness is not `unavailable' ... unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial"); Ryan, 103 Wash.2d at 171, 691 P.2d 197. The Supreme Court's decision in California v. Green articulates that the reasons for finding a witness unavailable under ER 804, such as privilege, refusal to testify, or lack of memory,[5] are not reasons relevant to "unavailability" under the confrontation clause. Indeed, a person who would be unavailable under ER 804 may still be available for purposes of the confrontation clause:
[T]he State here has made every effort to introduce its evidence through the live testimony of the witness; it produced Porter at trial, swore him as a witness, and tendered him for cross-examination. Whether Porter then testified in a manner consistent or inconsistent with his preliminary hearing testimony, claimed a loss of memory, claimed his privilege against compulsory self-incrimination, or simply refused to answer, nothing in the Confrontation Clause prohibited the State from also relying on his prior testimony to prove its case against Green.
Green, 399 U.S. at 167-68, 90 S.Ct. 1930.
Because competency is apparently not a requirement for availability under the confrontation clause, it may be unwarranted to assume that because a child is incompetent to testify at trial he was also "unavailable" to testify for confrontation clause purposes. See majority at 766. Although we held an incompetent child who is unable to take the stand is "unavailable" in Doe, 105 Wash.2d 889, 719 P.2d 554, the decision was clearly interpreting the meaning of "unavailability" under ER 804, not the confrontation clause. Doe, 105 Wash.2d at 895, 719 P.2d 554.
*778 Thus it may be that B.K. was "available" for confrontation clause purposes, and therefore admission of his hearsay declarations would require B.K. to be called to the stand in addition to finding his declarations reliable. See State v. Smith, 148 Wash.2d 122, 140, 59 P.3d 74, 83-85 (2002) (Sanders, J., concurring). Were the declarations first determined "reliable," the prosecutor would still need to call B.K. to testify and question him about the materially damaging aspects of the hearsay declarations. See State v. Rohrich, 132 Wash.2d 472, 478, 939 P.2d 697 (1997). But here, since the prosecutor chose not to put B.K. on the stand, the confrontation clause might require exclusion of his hearsay statements whether these statements were reliable or not. But the authorities on this point are not definitive, and I would not make a definitive holding on this point absent further briefing and argument.

CORROBORATION
The statute additionally requires the proponent of hearsay statements made by an "unavailable" declarant to introduce "corroborative evidence of the act." RCW 9A.44.120(2)(b). The trial court's determination of the corroborative nature of the evidence is reviewed for abuse of discretion. State v. Jones, 112 Wash.2d 488, 496 n. 7, 772 P.2d 496 (1989). As the majority notes, the corroboration requirement is independent of the indicia of reliability requirement. Majority at 772. The relevant question then becomes whether there was sufficient evidence to corroborate the claim of first degree child molestation. Proof of first degree child molestation requires the State to prove a person "has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1).
The primary evidence offered as corroboration is the physical evidence of injury to B.K.'s penis described as "consistent with rubbing or masturbation." C.J., 108 Wash. App. at 793, 32 P.3d 1051; majority at 772-773. In addition, the majority relies on B.K.'s doctor's testimony that the injury was apparently not caused by infections or similar medical causes but that the injury was consistent with masturbation or rubbing, though the doctor noted that in his experience three-year-olds do not spontaneously begin masturbating unless someone teaches them. Verbatim Report of Proceedings (RP) at 118-24. Based on this evidence the majority finds the trial court did not abuse its discretion when it found this evidence adequately corroborative. Majority at 772-773.
But the suggestion that the harm to B.K.'s penis corroborates the child molestation is specious. It is developmentally normal and even common for children of B.K.'s age to engage in self-stimulation or masturbation, which could have resulted in the same physical condition observed. 1 John E.B. Myers, Evidence in Child Abuse and Neglect Cases § 5.31, at 517 (3d ed.1997) (citing Martin A. Finkel & Allan R. De Jong, Medical Findings in Child Sexual Abuse, in Child Abuse: Medical Diagnosis and Management 185-247, at 186 (Robert M. Reece ed., 1994)). One study of children in day care found 30 percent were occasionally observed to engage in masturbation during nap time. Myers, supra, § 5.31, at 520 (citing Susan Phipps-Yonas et al., Sexuality in Early Childhood, 23 CURA Reporter 1-5 (May 1993) (published by the University of Minnesota, Center for Urban and Regional Affairs)). Moreover, at least some children who masturbate do so to the point of self-injury. Myers, supra, at 521 n. 588.
Admittedly, this court has taken a liberal approach toward corroborative evidence, stating "[t]he statute's essential purposes should not be defeated by a stubborn insistence on corroboration that is impossible to obtain." Jones, 112 Wash.2d at 496, 772 P.2d 496. Jones noted that "the determination of corroboration under RCW 9A.44.120 requires an evaluation of the particular circumstances [present] in each case." Id. at 498, 772 P.2d 496.
But still, corroboration requires enough evidence to "`support a logical and reasonable inference that the act of abuse described in the hearsay statement occurred.'" In re *779 Dependency of A.E.P., 135 Wash.2d 208, 232, 956 P.2d 297 (1998) (quoting State v. Swan, 114 Wash.2d 613, 622, 790 P.2d 610 (1990)). The situation presented in Dependency of A.E.P. is similar to the present case in that corroboration of abuse rested in part on an inconclusive physical exam. In A.E.P. we concluded such evidence was not corroborative under RCW 9A.44.120(2)(b); "A.E.P.'s physical exams were inconclusive. While an inconclusive exam does not rule out the possibility of abuse, neither does it corroborate the hearsay statements." A.E.P., 135 Wash.2d at 232, 956 P.2d 297. It is neither logical nor reasonable to infer based on this evidence that B.K. was molested by his female cousin.

ABUSE OF DISCRETION
A trial court's decision to admit hearsay statements under RCW 9A.44.120 is reviewed for abuse of discretion. State v. Hirschfield, 99 Wash.App. 1, 3, 987 P.2d 99 (1999). However, "[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons, an abuse of discretion exists." State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997) (citing State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995)). Here, the trial court concluded that B.K. was incompetent at trial but his hearsay declarations were nevertheless reliable. Since competence includes the ability to distinguish truth from falsehood, in this sense competence of a hearsay declarant at the time of the declaration is essential to reliability. See RCW 5.60.050(2) ("Those who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly." (emphasis added)). The Court of Appeals was thus entirely correct when it concluded the trial court abused its discretion.

CONCLUSION
The Court of Appeals opinion is supported both by our decision in Ryan, which calls for exclusion of hearsay statements made by a declarant who was not competent when the statement was made, as well as by the confrontation clause as interpreted by Roberts and Wright. Moreover, the declarant's "unavailability" is questionable and the corroborative evidence necessary to admit the declaration of a truly unavailable declarant is missing.
I dissent.
JOHNSON, J., concurs.
NOTES
[1] The defendant has not appealed the court's decision to admit the hearsay evidence under ER 803.
[2] Testimony of Senator Bluechel, sponsor of S.B. 4461, before a combined meeting of the Washington State Senate Judiciary and House Ethics, Law and Justice Committees on January 28, 1982.
[3] In the context of child sex abuse hearsay, the United States Supreme Court has declined to create a mechanical test for determining "particular guaranties of trustworthiness" for confrontation clause purposes. Instead, the Court has reasoned that those guaranties may be found in the totality of the relevant circumstances that surround the making of the statement. Idaho v. Wright, 497 U.S. 805, 818-19, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990). If the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial. Id. at 820, 110 S.Ct. 3139. The Court identified various factors in use by federal and state courts to judge the reliability of child statements and noted that the factors apply to the various hearsay exceptions and also to determining whether such statements bear "particularized guaranties of trustworthiness" under the confrontation clause. Id. at 821-22, 110 S.Ct. 3139. The court noted that the factors are not exclusive, and courts have considerable leeway in considering appropriate factors relating to whether the child declarant was particularly likely to be telling the truth when the statement was made. Id. at 822, 110 S.Ct. 3139.
[1] It is possible article I, section 22 of our state constitution provides greater protection in this arena than does the sixth amendment to the federal constitution, based on the different language in the two provisions. See, e.g., State v. Foster, 135 Wash.2d 441, 957 P.2d 712 (1998); compare Wash. Const. art. I, § 22 ("In criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face....") with United States Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."). That was the conclusion of five justices in Foster, albeit on a different issue. Foster, 135 Wash.2d at 473, 957 P.2d 712 (Alexander, J., concurring in part, dissenting in part); id. at 481, 957 P.2d 712 (Johnson, J., dissenting). The issue in Foster was whether RCW 9A.44.150 violates the confrontation clause since it permits child witnesses to testify via one-way, closed-circuit television. See Foster, 135 Wash.2d at 450, 957 P.2d 712. However, we need not address that issue here, particularly since neither party has raised the issue let alone conducted a formal Gunwall analysis. State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[2] Children's understanding of the obligation to tell the truth is not well developed for children four and under. One commentator explained:

Study of Lickona's six stages of moral reasoning... suggests that when children are asked to speak truthfully about events, their responses sometimes depend upon their age and moral frame of reference. Remember that children in stage 1 of moral development (ages four and younger) tend to believe that it is right that they get their own way. They are motivated by rewards and punishments. Their concepts of good and bad are not yet well defined, and they may more easily be persuaded to stray from the truth, believing, perhaps, that such action fits as easily into the good as the bad category. At this level, truth can mean what is most advantageous for the child.
Nancy W. Perry, Ph.D., Child and Adolescent Development: A Psycholegal Perspective, in John E.B. Myers, Child Witness Law and Practice 459, 485 (1987).
[3] While Wigmore's treatise is certainly not binding precedent, it was cited with approval by the Supreme Court in Wright in the context of confrontation clause limitations on hearsay. Wright, 497 U.S. at 819, 110 S.Ct. 3139.
[4] On the other hand, both Divisions Two and Three of the Court of Appeals appropriately continue to adhere to Ryan's requirement. See, e.g., State v. C.J., 108 Wash.App. 790, 32 P.3d 1051 (2001) (Div.Three); State v. Karpenski, 94 Wash. App. 80, 112, 971 P.2d 553 (1999) (Div.Two).
[5] ER 804 provides in relevant part:

(a) Definition of Unavailability. "Unavailability as a witness" includes situations in which the declarant:
(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or
(2) Persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
(3) Testifies to a lack of memory of the subject matter of the declarant's statement....